Judge Carr,
delivered his opinion.
This is a bill filed by the widow of John Owens, against ■ the executor, devisees and legatees, claiming her dower in the real estate, and her portion of the slaves and other personal estate. Answers were filed by the defendants. *511 The Chancellor appointed commissioners to lay off the widow’s dower in the lands, and her third of the slaves; and, sent the administration account to a master to settle and report. The report was returned with exceptions. The Chancellor considered them, settled the principles of the case, and re-committed the account, for a more special report as to the same points. From this order, the appeal is taken. There are two poinls in dispute; 1st. The sum of $ 500 charged in the bill to have been a loan from the testator to Jtuth the executor. Ruth, in his answer, claims this as a gift: 1 hat his grand-father, some time before his death, gave him the money, saying, “ I am now rich, you are poor; should our circumstances be reversed, you must return this:” that, with l,his understanding, he received the money, aud executed a note; which, not being among the testator’s papers, he presumes was destroyed, because it was never intended to demand the money. Two witnesses say, that about three years before the testator’s death, while Ruth was in the western country, they frequently heard him say he had given Ruth $ 500, and if he made a good use of it, would give him $ 500 more. This is all the evidence on that point. Not a word is said about this money in the will, although it contains devises and bequests to Ruth at much other property; particularly, the sum of $ 1,000. The will too is made about three years before the testator’s death; pío» bnbly, near the time of the loan of the $500. It may be, that the testator considered this as part of the legacy, and that the other $ 500, mentioned by the witnesses, was intended as the residue. This, however, is but conjecture. The commissioner refused to charge this $ 500 as a part of the tesla tor’s estate to he accounted for by the executor. An exception was taken on this ground, and sustained by the Chancellor.
I felt some doubt at first, whether this was not intended as a gift; but further reflection has satisfied me, that the Chancellor was right. The evidence was too *512 slight to establish a gift; especially, as Ruth was presuit to the testator’s mind in making his will, was the object °f his bounty; and, he would hardly have omitted this $ 500, if he had intended to add it to his other bequests. It would be dangerous to suffer an executor, under such circumstances, by his own oath, and evidence so slender, to set up a claim to a part of his testator’s estate.
The next point is, with respect to four notes executed by the testator, one to Ruth for # 1,000, one to Sarah Hodges for #1,000, one to Mary Carson for #500, and one to Sally Burnham for #100. The executor discharged these notes, and claimed a credit for them as for debts'of the testator. The commissioner allowed the credits. This was excepted to, and the exception sustained; because, the notes were legacies in disguise. They were given to the same persons to whom, in his will, the testator had left legacies of the very same amount; and, some of the witnesses proved, that when he executed the notes (about three days before his death,) he declared that it was to reduce the legacies. This point, indeed, is too clear for doubt or remark, and was very properly abandoned in the argument.
But it was contended, that in allotting to the widow her share of these sums, the Chancellor ought not, in the first instance, to have decreed against the executor; but (having all the parties before the Court) ought to have decreed against the payees of the notes, the widow’s proportion of the money, which each of them had received. It was said, that this would prevent multiplicity of actions, would put the saddle on the right horse; and that this was the course adopted and settled by the Court, in the late case of Chamberlayne v. Temple. Stare decisis is a safe and sound maxim, and I should be among the last to counsel a departure from it. I have, therefore, examined the case of Chamberlayne v. Temple, determined, if I found it governing the present, to submit at once my private judgment to the rule settled by the Court. But I have found *513 It; a ease so materially differing from this, as well to warrant a different course of decision. There, Temple, a creditor, sued the administrator of Chamberlayne, and recovered judgment. Finding no assets to satisfy his debt, he filed a bill against the administrator <le bonis non of Chamberlayne, and some of his children, to whom he had by several deeds, conveyed sundry slaves; allcdging, that these conveyances wore voluntary and fraudulent as to creditors of the donor; and praying, that the slaves might be subjected to the payment of his demand. Here we see, that the solo end of the bill was, a decree against the slaves in the hands of the donees. The personal representative of Chumherlayne was brought before the Court, not for a decree; hut merely because, as the creditor assailed the conveyances on the ground of a defect of assets in the donor, it was proper that the personal representative should he in Court. The Chancellor’s decree was general, that the deeds were fraudulent and void, and that the property bo surrendered, to be sold for the satisfaction of the judgment. In the argument of the ease here, it was objected that the donees ought not to have had a general decree against their property; but should have been subjected to a rateable contribution for the satisfaction of the judgment; and the Court did, in that particular, reform the decree, talcing care to state, in the most special manner, the I’easons applicable to that particular case, which induced them to do so. I think it will he seen at once, that the ease before us is materially different. The widow calls on Lhe executor for her share of the personal estate of her husband. The executor says, “ I have paid away such and such sums, to satisfy creditors. Of this you can have no portion.” The Court decides that these were not debts', and, in relation to the widow, form apart of the personalty. But, says the executor, “ although I have paid ihe.se monies wrongfully, yet I have paid them; and the decree ought to he, not against me, but against those who have received the money.” The answer is, “ Your wrong *514 ful payment is no payment at all. You are the person; I representative, and liable to the claimant; nor can you, by a misapplication of the funds, shift off that liability.” Anil this general answer applies with particular force to the case before us; for it is clear, that there has been no sur. prise in this business. The executor, when he paid off these notes, knew well that the payment of them as debus would be disputed. The receipts he took, prove this, They state that he paid them in satisfaction of the legacies given by the will; his own being one of them. If he had not chosen to take upon himself the risque of the payment, he might have brought the parties into equity, to litigate the matter. Under those circumstances, I think the decree was properly rendered against him, and ought to be affirmed.
The other Judges concurred, and the decree was accordingly affirmed.